IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02626-KLM

RAYMOND ROMERO,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court[1] on the **Social Security Administrative Record** [#14],[2] filed September 23, 2014, in support of Plaintiff's Complaint [#1] seeking review of the decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for supplemental security income benefits pursuant to Title XVI of the Act, 42 U.S.C. §§ 401-433.  On May 26, 2015, Plaintiff filed an Opening Brief [#17] (the "Brief").  Defendant filed a Response [#18] in opposition, and Plaintiff filed a Reply [#19].  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).  The Court has reviewed the entire case file and the applicable law and is sufficiently advised in the premises.  For the reasons

_____

[1] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2.  *See Consent Form* [#22]; *Order of Reference* [#23].

[2] "[#14]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Order.

set forth below, the decision of the Commissioner is **AFFIRMED**.

## I. Factual and Procedural Background

Plaintiff alleges that he became disabled at the age of forty-eight on May 18, 2011. Tr. 22, 30, 184.[3]  On May 27, 2011, he filed for Title XVI supplemental security income.  Tr. 12.  Plaintiff's claim was initially denied on June 7, 2011.  Tr. 12, 174.  Plaintiff then requested a hearing on his claim.  Tr. 117.  On January 10, 2013, a hearing was held before an Administrative Law Judge (the "ALJ").  Tr. 11-12, 25-53.  On February 6, 2013, the ALJ issued an unfavorable decision finding that Plaintiff was "not disabled under section 1614(a)(3)(A) of the Social Security Act."  Tr. 24.

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 27, 2011.  Tr. 14.  The ALJ found that Plaintiff has the following severe impairments: "affective disorder, learning disorder, degenerative disc disease, and arthropothies of the knees."  *Id.*  However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that "meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)."  *Id.*  The ALJ next determined that Plaintiff has the residual functional capacity ("RFC")

> to perform a range of light work as defined in 20 CFR 416.967(b) with the following limitations: [Plaintiff] is able to maintain concentration, persistence and pace to carry out, understand and remember instructions that can be learned in one month and have a reasoning, math and language level of no greater than "1" as described in the Dictionary of Occupational Titles/Selected Characteristics of Occupations; [Plaintiff] can occasionally interact with supervisors, coworkers, and the public; [Plaintiff] is able to lift

---

[3]  The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 14, 14-1, 14-2, 14-3, 14-4, 14-5, 14-6, 14-7, 14-8, and 14-9 by the sequential transcript numbers instead of the separate docket numbers.

> and carry 10 pounds frequently and 20 pounds occasionally; [Plaintiff] can sit for six hours during an eight-hour workday; [Plaintiff] can stand and/or walk for a combined total of six hours out of an eight-hour workday; [Plaintiff] is able to occasionally stoop, kneel and crouch; and . . . must avoid climbing ladders and scaffolds.

Tr. 16.  Based on Plaintiff's testimony and documents submitted to the ALJ, the ALJ found that Plaintiff did not have past relevant work.  Tr. 22.  Considering Plaintiff's age, education, work experience, and the testimony of an impartial vocational expert ("the VE"), the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."  *Id.*  The ALJ concluded that Plaintiff could perform the representative occupations of press operator and inspector, grader and sorter.  Tr. 23.  The ALJ therefore found Plaintiff was not disabled at step five of the sequential evaluation.  *Id.*

Plaintiff appealed the decision to the Appeals Council, which denied his request for review of the ALJ's decision.  Tr. 1-6.  Therefore, the ALJ's decision became a final decision of the Commissioner for purposes of judicial review.  20 C.F.R. §§ 416.1481, 422.210(a).

## II.  Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)).  Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (quoting *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000)). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not

displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it *de novo*." *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

## A.   Legal Standard

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. § 416.920. The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether a claimant is "presently engaged in substantial gainful activity." *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). If not, the ALJ considers at step two whether a claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Id.* (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Wall*, 561 F.3d at 1052 (quoting *Allen*, 357 F.3d at 1142). "If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him] from performing [his] past relevant work." *Wall*, 561

F.3d at 1052 (citing *Allen*, 357 F.3d at 1142). "Even if a claimant is so impaired, the agency considers, at step five, whether [he] possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

**B.   Substantial Evidence**

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1140 (internal quotations omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record . . . ." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). Further, evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III.  Analysis

Plaintiff requests judicial review of the ALJ's decision denying him supplemental security income. *Brief* [#17]. Specifically, Plaintiff argues that the ALJ erred at steps three, four, and five of his analysis. The Court addresses each argument in turn.

A.      **Step 3: Listing 12.05C**

Plaintiff argues that the ALJ erred in his step three analysis by finding that Plaintiff

did not "have an impairment or combination of impairments that meets or medically equals

the severity of one of the listed impairments" under Listing 12.05.  Tr. 14.  Specifically,

Plaintiff asserts that the ALJ erred in finding that Plaintiff did not meet or equal the severity

requirements under "paragraph C" of Listing 12.05.  *Brief* [#17] at 8.

Section 12.05 provides:

12.05 Intellectual disability:[4] Intellectual disability refers to significantly
subaverage general intellectual functioning with deficits in adaptive
functioning initially manifested during the developmental period; i.e., the
evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements
in A, B, C, or D are satisfied. . . .

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a
physical or other mental impairment imposing an additional and significant
work-related limitation of function[.]

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.  In order to satisfy "paragraph C" of Listing

12.05, a claimant must prove that he has a reduced mental capacity with deficits in

adaptive functioning, as defined in the capsule definition;[5] an IQ of 60 through 70; and an

additional physical or mental impairment which poses a significant limitation.  20 C.F.R. pt.

---

[4]  The name for Listing 12.05 was "mental retardation" at the time the ALJ issued his
Decision on February 6, 2013.  Tr. 9.  This name was changed to the current term "intellectual
disability" in September of 2013.  *See* Change in Terminology: "Mental Retardation" to "Intellectual
Disability," 78 Fed. Reg. 4649-01, 2013 WL 3936340 (Aug. 1, 2013) (codified at 20 C.F.R. pt. 404,
subpt. P, app. 1, § 12.05).

[5]  The "capsule definition" is the phrase used to describe the language in the introductory
paragraph of Listing 12.05.  *See Barnes v. Barnhart*, 116 F. App'x 934, 938-39 (10th Cir. 2004)
(noting that "[t]he agency refers to this introductory paragraph as the 'capsule definition'" and the
capsule definition "imposes additional elements to . . . Listing 12.05(C)"); *Perez v. Colvin*, No. 13-
cv-02914-MEH, 2014 WL 5473751, at *13 (D. Colo. Oct. 29, 2014).

404, subpt. P, app. 1, § 12.05; *Timmons v. Astrue*, 360 F. App'x 984, 987 (10th Cir. 2010); *Lax v. Astrue*, 489 F.3d 1080,1085 (10th Cir. 2007).

In part, Plaintiff argues that the ALJ erred in his rejection of Plaintiff's IQ score because the ALJ improperly based his findings on Plaintiff's efforts during his psychological evaluations and IQ test, Plaintiff's diagnosis of borderline intellectual functioning, and Plaintiff's GAF scores. *Brief* [#17] at 1, 8-12. "The GAF is a 100-point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning." *Keyes-Zachary v. Astrue*, 695 F.3d 1156,1162 n.1 (10th Cir. 2012).

An ALJ does not need to "simply accept IQ results." *McKown v. Shalala*, 5 F.3d 546 Table), 1993 WL 335788, at *3 (10th Cir. Aug. 26, 1993). "It is within the province of an ALJ to make factual determinations regarding the validity of an IQ score, that is whether the IQ score is an accurate reflection of [a claimant's] intellectual capabilities." *Flores v. Astrue*, 285 F. App'x 566, 568 (10th Cir. 2008) (quoting *Lax*, 489 F.3d at 1087) (internal quotations omitted). Because the results of an IQ test are "only part of the overall assessment," the ALJ must also look at "the narrative report that accompanies the test results [which] should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation" when making a determination on validity. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00D.6.a. Thus, an ALJ may find an IQ score invalid for a number of reasons as long as there is substantial evidence to support the conclusion. *McKown*, 1993 WL 335788, at *3.

Here, although Plaintiff had a full-scale IQ score of 65, Tr. 363, the ALJ found Plaintiff's IQ score to be invalid because of Plaintiff's credibility. Tr. 19-20. Specifically, the

ALJ found that Plaintiff's IQ score was not entirely credible based upon the reports of three psychologists. Tr. 19-22. The ALJ afforded weight to these opinions because the reports were created by mental health professionals and were generally consistent with one another. Tr. 21. In contrast, the ALJ afforded less weight to the January 2010 consultative physician's report because the physician who conducted the assessment lacked the expertise to evaluate mental impairments.[6]  Tr. 21, 274-78.

The ALJ noted that all three psychologists' reports were consistent in finding that Plaintiff was not entirely credible. Specifically, Frederick Leidal, Psy. D. ("Dr. Leidal"), who administered Plaintiff's full-scale IQ test in 2008, which resulted in a full-scale score of 65, found that Plaintiff's IQ results "appear[ed] fairly valid, possibly slightly low. Effort was below average on some subsets." Tr. 363. The Court notes that the full-scale IQ test administered by Dr. Leidal was the only full-scale test administered to Plaintiff. Dr. Leidal further stated that during the administration of the memory test,  "[t]he following scores appear below expectations and likely invalid. The patient's effort was below average, again." Tr. 364. Dr. Leidal concluded, "Although, [Plaintiff's] cognitive abilities are very low, his effort was questionable on some tests, he is depressed, and he has a history of chronic alcoholism that could have also lowered some scores." Tr. 364-65.

Stuart Kutz, Ph.D. ("Dr. Kutz"), who examined Plaintiff in January of 2010, also noted that Plaintiff's credibility was questionable. Tr. 280. Dr. Kutz stated that there was "a question of some symptom exaggeration" and that Plaintiff's "level of cooperation overall, as well as his reliability, are questionable. . . ." Tr. 280. He further stated that "[b]asic

---

[6]  The ALJ did afford weight to the 2010 physician's report when the ALJ discussed Plaintiff's physical impairments because the physician had the expertise in that area. Tr. 21.

cognitive functions seem to be somewhat limited, but again with questions about his level of effort." Tr. 285.  Dr. Kutz also specifically noted that Plaintiff's memory results "raise[d] questions as to credibility." Tr. 283-84.  The third psychologist, M. Ellen Fontenot, Psy. D. ("Dr. Fontenot"), examined Plaintiff in August of 2011 and similarly found that Plaintiff's "[e]ffort on [mental-status exam] appeared [below] average." Tr. 307.  Thus, Dr. Leidal, Dr. Kutz, and Dr. Fontenot consistently found Plaintiff's credibility to be an issue.

In addition to specifically noting Plaintiff's credibility, the three psychologists discussed Plaintiff's GAF scores.  Tr. 285, 308, 365.  Plaintiff consistently received a moderate category GAF score, with Dr. Leidal finding a GAF score of 59 and both Dr. Kutz and Dr. Fontenot finding a GAF score of 58.  Tr. 285, 208, 365.  *See* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32, 34 (Text Revision 4th ed. 2000) ("51–60: Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).") (internal quotations omitted).  The ALJ took specific note of Dr. Kutz's GAF finding and stated "[a] GAF score of 58 is at the higher functioning end of the range of scores[.]" Tr. 20.  Although Plaintiff correctly states that the GAF score is no longer used, at the time Plaintiff was evaluated and when the ALJ made his determination, the GAF score was used to assess psychological functioning.  *See Fernandez v. Colvin*, No. 13-cv-00376-RM, 2016 WL 447556, at *2 n.2 (D. Colo. Feb. 5, 2016) (noting that "the current Diagnostic and Statistical Manual of Mental Disorders (DSM-V) does not use GAF"); *see also* Am. Psychiatric Ass'n Diagnostic and Statistical Manual of Mental Disorders (DSM-V) 16 (5th ed. 2013) (which was published on May 18, 2013).  Thus, the ALJ permissibly used the GAF score as evidence of Plaintiff's credibility.

*See, e.g.*, *Walker v. Colvin*, No. , 2015 WL 1816589, at *6 (D. Colo. Apr. 20, 2015) ("The range of the GAF scores combined with the records of [plaintiff's] mental health assessments are sufficient to meet the standards for substantial evidence to support the ALJ's conclusion").

Along with the consistently moderate GAF scores, Plaintiff was found by all three psychologists to be at a borderline level of intellectual function rather than at a mild mental retardation level.  Tr. 285, 308, 364.  Dr. Fontenot went further and stated that Plaintiff did not meet the criteria for mild mental retardation because "there [was] no evidence of IQ <70 prior to the age of 18."  Tr. 308.

Based upon the three psychological evaluations, all which noted that Plaintiff's effort and credibility were questionable, the moderate GAF scores, and the consistent finding that Plaintiff was at a borderline level of intellectual function, there is substantial evidence supporting the ALJ's finding that Plaintiff was not entirely credible in his three psychological evaluations nor was he entirely credible during his only  IQ test.  *See Flores*, 285 F. App'x at 568; *Lax*, 489 F.3d at 1087.  Accordingly, the Court finds there was substantial evidence to support the ALJ's determination that Plaintiff's IQ score was not a valid IQ score, as required under Listing 12.05C; and therefore the ALJ did not commit reversible error with respect to his step three analysis.[7]  *See Glenn v. Shalala*, 21 F.3d 983, 988 (10th Cir. 1994)

---

[7]   Plaintiff had the burden of proof to establish error by showing "that the record demonstrate[d] [that he met] the requirements of Listing 12.05C," which includes a showing of a valid IQ score.  *Perez v. Colvin*, No. 13-cv-02914-MEH, 2014 WL 5473751, at *13 (D. Colo. Oct. 29, 2014).  Because the record demonstrates that Plaintiff's IQ score was not valid, Plaintiff did not meet his burden of proof; therefore the Court does not need to address Plaintiff's other arguments regarding step three.  *See Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990), *superseded by statute on other grounds as stated in Colon v. Apfel*, 133 F. Supp. 2d 330, 338-39 (S.D.N.Y. 2001) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); *Lax v. Astrue*, 489 F.3d 1080, 1089 (10th Cir. 2007) (addressing claimant's Listing

(explaining that the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).

## B.    Step 4: Plaintiff's Daily Activities

Plaintiff argues that the ALJ erred in relying on Plaintiff's daily activities as evidence that Plaintiff did not suffer disabling symptoms. *Brief* [#17] at 17-20. Plaintiff specifically contends that the ALJ found Plaintiff to not be credible based upon Plaintiff's testimony regarding his daily activities. *Id.* at 13-14.

Evidence that a claimant engages in limited daily activities does not establish that the claimant has an ability to work. *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988); *Hamlin v. Barnhart*, 265 F.3d 1208, 1220–21 (10th Cir. 2004). However, this type of evidence may be considered along with other evidence in determining whether the claimant is entitled to disability benefits. *Gossett*, 862 F.2d at 807.

Here, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [Plaintiff's] symptoms [were] not entirely credible" and that the "record as a whole [did] not appear to support the severity of symptoms and limitations alleged by [Plaintiff]." Tr. 19. The ALJ further found that "[t]hough [Plaintiff] alleged impairments severe enough to cause him to be unable to work, he described certain activities in his testimony and Function Report—Adult . . . that do not support that contention." Tr. 19. The ALJ then summarized Plaintiff's statements about daily activities and stated:

---

12.05(C) argument, finding that the "argument would ultimately fail because 12.05(C) also requires a valid IQ score and we have already determined that [the claimant's] IQ scores [were] invalid"); *King v. Astrue*, No. 10–cv–01530–LTB, 2011 WL 3471015, at *4 (D. Colo. Aug. 8, 2011) ("[p]laintiff therefore had to show . . . that he had a valid IQ score of 70 or below").

> [Plaintiff] noted dusting, feeding pet birds, taking out trash, watering the lawn, doing laundry, cleaning up after a pet dog, and generally doing chores for an hour at a time before resting for 30 minutes. . . . [Plaintiff has] some difficulty reaching overhead to put on shirts and bending to put on shoes . . . some problems holding a razor to shave. . . . [Plaintiff] noted driving a car . . . shopping in stores once a month for groceries and personal items . . . he can pay bills, count change, and use a debit card.  Socially, he described no problems getting along with his brother, with whom he lives.  He also reported spending time with his girlfriend once a month.

Tr. 19.  The Court finds that the ALJ's summary of Plaintiff's testimony about his daily activities is supported by the record.  *See* Tr. 47-48, 206-09.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence."  *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (internal quotations omitted); *see also White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001).  "Nevertheless an ALJ's adverse credibility finding 'should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'"  *Mendez v. Colvin*, 588 F. App'x 776, 779 (10th Cir. 2014) (quoting *Wilson*, 602 F.3d at 1144).  The ALJ is not required to set forth a formalistic factor-by-factor recitation of the evidence, but must only set forth the specific evidence he relied on in evaluating Plaintiff's testimony.  *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).  Specific evidence that the ALJ can evaluate and rely upon includes:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988); *see also id.* at 1132 n.7 (noting further that these factors "are not exhaustive . . . but merely illustrative").  Therefore, as long as the ALJ links his credibility assessment to specific evidence in the record, his

determination is entitled to substantial deference.  *White*, 287 F.3d at 910; *see also Qualls*, 206 F.3d at 1372.

The Court finds that the ALJ appropriately considered Plaintiff's daily activities in the evaluation of Plaintiff's alleged disability because the ALJ also relied on other evidence in the record in making his overall credibility determination, specifically, the objective medical evidence.  *See Huston*, 838 F.2 at 1132 n.7 ("When weighed in combination, such factors can shed light on the determination of credibility").   In making his determination, the ALJ reviewed Plaintiff's records from Denver Health Medical Center, the 2010 physical examination, and the 2013 x-rays and MRIs of Plaintiff's knees and shoulders.  Tr. 21.  *See also* Tr. 276, 318, 322-24,326, 341, 343, 346, 354-56, 399-401, 403-09.  In evaluating the above medical evidence, in combination with Plaintiff's statements about his daily activities, the ALJ found that:

> [Plaintiff's] physical conditions, his subjective complaints and alleged limitations do not appear to be supported by examination findings . . . [The] treatment records do not document the severe pain in multiple joints that [Plaintiff] described, nor do they document a need to be in bed all day because of pain or depression.  These records also do not document abnormalities in his hands.  Essentially the treatment records do not show examination findings significantly different from those at the earlier [2010] consultative physical examination . . . [Plaintiff's] musculoskeletal examination . . . was ultimately concluded to be benign overall, and the opinion of the examining physician was that [Plaintiff] was capable of performing light to moderate, but not extreme, activities.

Tr. 21.

Accordingly, the Court finds that the ALJ set forth specific evidence—daily activities and objective medical records—which he used in evaluating Plaintiff's credibility, and thus he sufficiently linked his determination to substantial evidence in the record.  *See White*, 287 F.3d at 910 ("determination did not rest on mere boilerplate language, but instead was

linked to specific findings of fact . . . [that were] fairly derived from the record"); *see also Wilson*, 602 F.3d at 1144 ("Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence.") (internal quotations omitted). Therefore, the ALJ did not commit reversible error in evaluating Plaintiff's daily activities in combination with the medical records. *See Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983) (stating that "[daily activities] may be considered, along with medical testimony, in the determination of whether a party is entitled to disability benefits").

**C.     Step 5: Vocational Expert Testimony**

Plaintiff argues that the ALJ erred in his step five finding because the VE's testimony about the Dictionary of Occupational Titles ("DOT") was not consistent regarding the job of press operator. *Brief* [#17] at 16, 18. Specifically, Plaintiff asserts that when the VE spoke about the position of press operator, the response was not consistent with the ALJ's hypothetical question, which asked for a position "at a reasoning math or language level of no greater than one," Tr. 50,  because the position of press operator has a reasoning level of 2, a math level of 1, and a language level 2. *Brief* [#17] at 17. Plaintiff contends that the ALJ's reliance on the VE's testimony constitutes reversible error. *Id.*

Plaintiff further asserts that the VE's testimony regarding the job of inspector, graders and sorters was unclear because the VE first stated that Plaintiff could perform the position of "grader and sorter," but then when discussing the number of positions that existed, the VE stated "inspector, graders and sorters." *Id.* at 18-19. Plaintiff contends that because the VE's testimony causes confusion, it is not certain as to the number of jobs which exist. *Id.* at 19.

According to applicable law,

When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT. In these situations, the adjudicator will:

Ask the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT; and

If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 2000 WL 1898704, at *4; *see also Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) (An ALJ "must investigate and elicit a reasonable explanation for any conflict between the [DOT] and the expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

"[W]hen a VE provides evidence about the requirements of a job or occupation, the ALJ has an affirmative responsibility to ask about any possible conflict between the expert's testimony and the DOT, and if the VE's testimony appears to conflict with the DOT, to obtain a reasonable explanation for the apparent conflict." *Holcom v. Barnhart*, 79 F. App'x 397, 398 (10th Cir. 2003) (quoting *Haddock*, 196 F.3d at 1087) (internal quotations omitted).

The VE's testimony regarding the positions of press operator and inspector, graders and sorters is as follows:

[ALJ] Q.   . . . Assume our individual is able to maintain concentration, persistence and pace in order to carry out, understand and remember instructions that would be at a reasoning math or language level of no greater than one as defined in the Dictionary of Occupational Titles and it's companion, the Selective Characteristics of Occupations . . . Would there be unskilled occupations that this first individual could perform?

[VE] A.  I believe so.  At the light, unskilled level, I have listings of positions as a press operator.  That's DOT 690.685-014.  That's light with an SVP of

-16-

2.  Positions as a grader and sorter, 529.687-186, and that is light with an SVP of 2.

[ALJ] Q.  And these have the reasoning, math, language level no greater than 1.

[VE] A.  Yes, Your Honor, they are basic levels.

[ALJ] Q.  So as described in the DOT it's at a level of 1?

[VE] A.  Yes.

[ALJ] Q.  Okay.  And how many of the press operators, graders and sorters might there be?

[VE] A.  In the national economy, 320,000.  In the inter mountain area, which includes Montana, Wyoming and Colorado, approximately 1,300.  Inspectors, graders and sorters, on the national level, 354,000.  In the inter mountain area, approximately 1,000.

[ALJ] Q.  And the two occupations that you've identified, are these just examples or are these the only occupations?

[VE] A.  These are examples.

[ALJ] Q.  As you've identified the two examples, how do they compare with their description in the Dictionary of Occupational Titles?

[VE] A.  They're consistent.

Tr. 50-52.

As Plaintiff correctly points out, the VE's testimony is not consistent with the DOT.

*Brief* [#17] at 16-18.  The DOT states that a press operator has a reasoning and language

level of 2 and a math level of 1, whereas the VE stated that press operator was at a level

of 1.   *See Assembly-press operator* (DOT 690.685-014), 1991 WL 678500 (2008).

Although the ALJ did ask how the position of press operator compared with the DOT and

the VE responded that they were consistent, this is not a "reasonable explanation for the

apparent conflict."  *Roman v. Colvin*, No. 13-cv-03215-RBJ, 2015 WL 1345430, at *5 (D.

Colo. Mar. 23, 2015) (finding that the ALJ's inquiry into whether the VE's testimony was consistent with the DOT was not sufficient under SSR 00–4p, 2000 WL 1898704)*; but see Sitsler v. Astrue*, 410 F. App'x 112, 120 (10th Cir. 2011) (remanding in part because the ALJ did not ask "whether the VE['s] testimony was consistent with the DOT").  Thus the Court finds that there is an apparent conflict between the VE's testimony and the DOT, which the ALJ did not ask the VE to resolve.  *See, e.g.*, *Headley v. Colvin*, No. 13-cv-02989-WYD, 2015 WL 1525561, at *8 (D. Colo. Mar. 31, 2015) (finding a remand was required because the VE's testimony was not consistent with the DOT).

However, the ALJ committed harmless error because the VE identified an additional job, "grader and sorter" that Plaintiff could perform based on the hypothetical question posed by the ALJ.  Tr. 51.  Plaintiff argues that it is unclear as to what position the VE was referring to—specifically that it is unclear whether the VE meant a position of "grader and sorter" or the position of "inspectors, graders and sorters."  *Id.*  Based on the record, the VE specifically testified that the position he was referring to was DOT position 529.687-186.  Tr. 51.  DOT position 529.687-186 is "grader and sorter" and this position is consistent with a reasoning, language, and math level of 1.  *Brief* [#17] at 19.  Although the VE did state "inspector," "this is not an instance in which the alleged conflict was so obvious . . . that the ALJ should have picked up on [it] without any assistance."  *Laughton v. Astrue*, No. 08-cv-01848-REB, 2009 WL 2372352, at *3 (D. Colo. July 30, 2009) (quoting *Overman v. Astrue*, 564 F.3d 456, 463 (7th Cir. 2008)) (internal quotations omitted).

Additionally, according to the VE, DOT position 529.687-186 "grader and sorter" exists in significant numbers in the national economy.  *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (holding that the third job identified by the VE existed in significant

numbers in the national economy and therefore the ALJ's reliance on the VE's testimony about the other two jobs, which the claimant could not perform, was harmless error); *see also Evans v. Colvin*, __ F. App'x __, __, 2016 WL 362438, at *3 (10th Cir. Jan. 29, 2016) ("[W]e have held an ALJ's erroneous inclusion of some jobs to be harmless error where there remained a significant number of other jobs in the national economy.") (citing *Bainbridge v. Colvin*, 618 F. App'x 384, 391-92 (10th Cir. 2015) (500,000 jobs); *Shockley v. Colvin*, 564 F. App'x 935, 940-41 (10th Cir. 2014) (215,000 jobs); *Chrismon v. Colvin*, 531 F. App'x 893, 899-900 (10th Cir. 2013) (212,000 jobs); *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (152,000 jobs)).[8] Here, the VE's testimony about the number of jobs which existed for the position of "grader and sorter" was that there were 354,000 jobs nationally and 1,000 jobs regionally.  Tr. 51.  Therefore, "any reasonable trier of fact would be compelled to conclude" that 354,000 is a significant number for jobs in the national economy for the purposes of a step-five determination.  *Bainbridge*, 618 F. App'x at 392 (citing *Raymond*, 621 F.3d at 1274); *Stokes*, 274 F. App'x at 684 (finding that "152,000 jobs available nationally" was a significant number); *see also Quintana v. Colvin*, No. 14-1134-SAC, 2015 WL 4664980, at *6 (D. Kan. Aug. 6, 2015) (stating "in a number of cases, the 10th Circuit determined that the ALJ committed harmless error because the court found that when the remaining number of jobs . . . nationally range from 152,000 to 215,000, no reasonable factfinder could have determined that a suitable number of jobs did not exist in significant numbers.")

Therefore, there is substantial evidence to support the ALJ's conclusion that "there

---

[8]  *See also Raymond*, 621 F.3d at 1274 n.2 (clarifying that *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992) "indicated that the relevant test is *either* jobs in the regional economy *or* jobs in the national economy" and that the court in *Trimiar* used the regional economy test because the VE's testimony was about the regional economy).

are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. 22, because the position of "grader and sorter" exists at a number of 354,000 in the national economy.  Accordingly, the Court finds that the ALJ committed no reversible error in his step five analysis and his reliance on the VE's testimony.

## IV.  Conclusion

For the foregoing reasons, the record contains substantial evidence from which the ALJ concluded that Plaintiff is not entitled to benefits under the Act during the time relevant to this case.  The ALJ's decision was based upon substantial evidence and is free of reversible legal error.  Accordingly,

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.

Dated:  March 29, 2016

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge